MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
EDGAR SAPON SAPON, *individually and on behalf of others similarly situated,*

                *Plaintiff,*

-against-

UNCLE PAUL'S PIZZA & CAFE INC. (D/B/A UNCLE PAUL'S PIZZA), NN PIZZA CORP. (D/B/A PIZZA FACTORY), PASKO PAUL NICAI, DINO REDZIC (A.K.A. ABIDIN), NATALIA MOURGA, NEAT KRKUTI, BENNY DOE, and LEO DOE,

                *Defendants.*
------------------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)**

**ECF Case**

     Plaintiff Edgar Sapon Sapon ("Plaintiff Sapon" or "Mr. Sapon"), individually and on behalf of others similarly situated, by and through his attorneys, Michael Faillace & Associates, P.C., upon his knowledge and belief, and as against Uncle Paul's Pizza & Cafe Inc. (d/b/a Uncle Paul's Pizza), NN Pizza Corp. (d/b/a Pizza Factory), ("Defendant Corporations"), Pasko Paul Nicai, Dino Redzic (a.k.a. Abidin), Natalia Mourga, Neat Krkuti, Benny Doe, and Leo Doe, ("Individual Defendants"), (collectively, "Defendants"), alleges as follows:

**NATURE OF ACTION**

1. Plaintiff Sapon is a former employee of Defendants Uncle Paul's Pizza & Cafe Inc. (d/b/a Uncle Paul's Pizza), NN Pizza Corp. (d/b/a Pizza Factory), Pasko Paul Nicai, Dino Redzic (a.k.a. Abidin), Natalia Mourga, Neat Krkuti, Benny Doe, and Leo Doe.

2. Defendants own, operate, or control two pizzerias, located at 70 Vanderbilt Ave, New York, NY 10017 under the name "Uncle Paul's Pizza" and at 30-30 47th Avenue #140, Queens, NY 11101 under the name "Pizza Factory".

3. Upon information and belief, individual Defendants Pasko Paul Nicai, Dino Redzic (a.k.a. Abidin), Natalia Mourga, Neat Krkuti, Benny Doe, and Leo Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4. Plaintiff Sapon was an employee of Defendants.

5. Plaintiff Sapon was employed as a cook at the restaurants located at 70 Vanderbilt Ave, New York, NY 10017 and at 30-30 47th Avenue #140, Queens, NY 11101.

6. At all times relevant to this Complaint, Plaintiff Sapon worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that he worked.

7. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiff Sapon appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8. Further, Defendants failed to pay Plaintiff Sapon the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

9. Furthermore, Defendants repeatedly failed to pay Plaintiff Sapon wages on a timely basis.

10. Defendants' conduct extended beyond Plaintiff Sapon to all other similarly situated employees.

11. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Sapon and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

12. Plaintiff Sapon now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

13. Plaintiff Sapon seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff Sapon's state law claims under 28 U.S.C. § 1367(a).

15. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate

headquarters and offices within this district, and Defendants operate two pizzerias located in this district. Further, Plaintiff Sapon was employed by Defendants in this district.

## PARTIES

*Plaintiff*

16. Plaintiff Edgar Sapon Sapon ("Plaintiff Sapon" or "Mr. Sapon") is an adult individual residing in Kings County, New York.

17. Plaintiff Sapon was employed by Defendants at "Uncle Paul's Pizza" and "Factory Pizza" from approximately October 2015 until on or about May 2, 2018.

18. Plaintiff Sapon consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

19. At all relevant times, Defendants owned, operated, or controlled two pizzerias, located at 70 Vanderbilt Ave, New York, NY 10017 under the name "Uncle Paul's Pizza" and at 30-30 47th Avenue #140, Queens, NY 11101 under the name "Pizza Factory".

20. Upon information and belief, Uncle Paul's Pizza & Cafe Inc. (d/b/a Uncle Paul's Pizza) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 70 Vanderbilt Ave, New York, NY 10017.

21. Upon information and belief, NN Pizza Corp. (d/b/a Pizza Factory) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 30-30 47th Avenue #140, Queens, NY 11101.

22. Defendant Pasko Paul Nicai is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Pasko Paul Nicai is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Pasko Paul Nicai possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff Sapon, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

23. Defendant Dino Redzic (a.k.a. Abidin) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dino Redzic (a.k.a. Abidin) is sued individually in

his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Dino Redzic (a.k.a. Abidin) possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff Sapon, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

24. Defendant Natalia Mourga is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Natalia Mourga is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Natalia Mourga possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiff Sapon, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

25. Defendant Neat Krkuti is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Neat Krkuti is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Neat Krkuti possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff Sapon, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

26. Defendant Benny Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Benny Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Benny Doe possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff Sapon, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27. Defendant Leo Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Leo Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Leo Doe possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He

determines the wages and compensation of the employees of Defendants, including Plaintiff Sapon, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

28. Defendants operate two pizzerias located in the Midtown East section of Manhattan and in the Long Island city section in Queens in New York City.

29. Individual Defendants, Pasko Paul Nicai, Dino Redzic (a.k.a. Abidin), Natalia Mourga, Neat Krkuti, Benny Doe, and Leo Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

30. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31. Each Defendant possessed substantial control over Plaintiff Sapon's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Sapon, and all similarly situated individuals, referred to herein.

32. Defendants jointly employed Plaintiff Sapon (and all similarly situated employees) and are Plaintiff Sapon's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

33. In the alternative, Defendants constitute a single employer of Plaintiff Sapon and/or similarly situated individuals.

34. Upon information and belief, Individual Defendants Pasko Paul Nicai, Dino Redzic (a.k.a. Abidin), Natalia Mourga, Neat Krkuti, Benny Doe, and Leo Doe operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

   a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

   b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c) transferring assets and debts freely as between all Defendants,

   d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

   e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of their own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

35.   At all relevant times, Defendants were Plaintiff Sapon's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff Sapon, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Sapon's services.

36.   In each year from 2015 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.   In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiff*

38.   Plaintiff Sapon is a former employee of Defendants who was employed as a cook. Plaintiff Sapon seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Edgar Sapon Sapon*

39.   Plaintiff Sapon was employed by Defendants from approximately October 2015 until on or about May 2, 2018.

40.   Defendants employed Plaintiff Sapon as a cook.

41.   Plaintiff Sapon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

42.   Plaintiff Sapon's work duties required neither discretion nor independent judgment.

43.   Throughout his employment with Defendants, Plaintiff Sapon regularly worked in excess of 40 hours per week.

44.   From approximately October 2015 until on or about April 2016, Plaintiff Sapon worked as a cook at "Uncle Paul's Pizza" from approximately 10:00 a.m. until on or about 10:20 p.m., 6 days a week (typically 73.5 hours per week).

45.   From approximately May 2016 until on or about September 2016, Plaintiff Sapon worked as a cook at "Uncle Paul's Pizza" from approximately 10:00 a.m. until on or about 10:20 p.m., four days a week, from

approximately 5:00 p.m. until on or about 2:20 a.m., one day a week, and from approximately 1:00 p.m. until on or about 10:20 p.m., one day a week (typically 67.5 hours per week).

46. From approximately October 2016 until on or about December 2016, Plaintiff Sapon worked as a cook at "Uncle Paul's Pizza" from approximately 8:00 a.m. until on or about 10:20 p.m., four days a week; from approximately 5:00 p.m. until on or about 2:20 a.m., one day a week, and from approximately 1:00 p.m. until on or about 10:20 p.m., one day a week (typically 75.5 hours per week)

47. From approximately January 2017 until on or about September 2017, Plaintiff Sapon worked as a cook at "Uncle Paul's Pizza" from approximately 10:00 a.m. until on or about 10:20 p.m., four days a week, from approximately 5:00 p.m. until on or about 2:20 a.m., one day a week, and from approximately 1:00 p.m. until on or about 10:20 p.m., one day a week (typically 67.5 hours per week).

48. From approximately October 2017 until on or about December 2017, Plaintiff Sapon worked as a cook at "Uncle Paul's Pizza" from approximately 8:00 a.m. until on or about 10:20 p.m., four days a week; from approximately 5:00 p.m. until on or about 2:20 a.m., one day a week, and from approximately 1:00 p.m. until on or about 10:20 p.m., one day a week (typically 75.5 hours per week)

49. From approximately January 2018 until on or about May 2, 2018, Plaintiff Sapon worked as a cook at "Pizza Factory" from approximately 7:00 a.m. until on or about 4:30 p.m., 5 days a week (typically 47.5 hours per week).

50. From approximately October 2015 until on or about December 2017, Defendants paid Plaintiff Sapon his wages in cash.

51. From approximately January 2018 until on or about May 2, 2018, Defendants paid Plaintiff Sapon his wages by personal check.

52. From approximately October 2015 until on or about March 2016, Defendants paid Plaintiff Sapon a fixed salary of $600 per week.

53. From approximately April 2016 until on or about April 2017, Defendants paid Plaintiff Sapon a fixed salary of $720 per week.

54. From approximately May 2017 until on or about May 2, 2018, Defendants paid Plaintiff Sapon a fixed salary of $800 per week.

55. Plaintiff Sapon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

56. For example, Defendants required Plaintiff Sapon to work an additional 20 minutes to 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked. In addition, during the months of October to December of each year, Defendants required Plaintiff Sapon to start working 2 hours prior to his regular start time 4 days a week, and did not compensate him for the additional hours he worked.

Although defendants granted Plaintiff Sapon 20 or 30 minute meal breaks, they constantly interrupted these breaks and required him to work.

57. In order to get paid, Plaintiff Sapon was required to sign a document falsely stating that he had only worked 40 hours a week and that he had been paid an hourly rate.

58. In addition, when he moved from Uncle Paul's to the Pizza factory, defendants required Plaintiff Sapon to sign a 7 page document, the contents of which he was not allowed to review.

59. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sapon regarding overtime and wages under the FLSA and NYLL.

60. Defendants did not provide Plaintiff Sapon an accurate statement of wages, as required by NYLL 195(3).

61. Defendants did not give any notice to Plaintiff Sapon, in English and in Spanish (Plaintiff Sapon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

62. Defendants required Plaintiff Sapon to purchase "tools of the trade" with his own funds—including three pair of shoes, two shirts and two pants.

*Defendants' General Employment Practices*

63. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Sapon (and all similarly situated employees) to work in excess of 40 hours a week without paying him appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

64. Plaintiff Sapon was a victim of Defendants' common policy and practices which violate his rights under the FLSA and New York Labor Law by, *inter alia*, not paying him the wages he was owed for the hours he worked.

65. Defendants' pay practices resulted in Plaintiff Sapon not receiving payment for all his hours worked, and resulting in Plaintiff Sapon's effective rate of pay falling below the required minimum wage rate.

66. Defendants habitually required Plaintiff Sapon to work additional hours beyond his regular shifts but did not provide him with any additional compensation.

67. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

68. Defendants' time keeping system did not reflect the actual hours that Plaintiff Sapon worked.

69. Defendants required Plaintiff Sapon to sign a document the contents of which he was not allowed to review when he moved from one pizza place to the other.

In order to get paid each week, defendants required Plaintiff Sapon to sign a document that reflected inaccurate or false hours worked and falsely stated that he was paid an hourly wage.

70. Plaintiff Sapon was paid his wages in cash and then by personal checks.

71. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

72. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Sapon (and similarly situated individuals) worked, and to avoid paying Plaintiff Sapon properly for his full hours worked.

73. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

74. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Sapon and other similarly situated former workers.

75. Defendants failed to provide Plaintiff Sapon and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

76. Defendants failed to provide Plaintiff Sapon and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

**FLSA COLLECTIVE ACTION CLAIMS**

77. Plaintiff Sapon brings his FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

78. At all relevant times, Plaintiff Sapon and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

79. The claims of Plaintiff Sapon stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

80. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

81. At all times relevant to this action, Defendants were Plaintiff Sapon's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Sapon (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

82. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

83. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

84. Defendants failed to pay Plaintiff Sapon (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

85. Defendants' failure to pay Plaintiff Sapon (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

86. Plaintiff Sapon (and the FLSA Class members) were damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA**

87. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

88. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff Sapon (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

89. Defendants' failure to pay Plaintiff Sapon (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

90. Plaintiff Sapon (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

91. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

92. At all times relevant to this action, Defendants were Plaintiff Sapon's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Sapon, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

93. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Sapon less than the minimum wage.

94. Defendants' failure to pay Plaintiff Sapon the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

95. Plaintiff Sapon was damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

96. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

97. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Sapon overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

98. Defendants' failure to pay Plaintiff Sapon overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

99. Plaintiff Sapon was damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

OF THE NEW YORK COMMISSIONER OF LABOR

100. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

101. Defendants failed to pay Plaintiff Sapon one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Sapon's spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

102. Defendants' failure to pay Plaintiff Sapon an additional hour's pay for each day Plaintiff Sapon's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

103. Plaintiff Sapon was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW

104. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

105. Defendants failed to provide Plaintiff Sapon with a written notice, in English and in Spanish (Plaintiff Sapon's primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

106. Defendants are liable to Plaintiff Sapon in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW

107. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

108. With each payment of wages, Defendants failed to provide Plaintiff Sapon with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

109. Defendants are liable to Plaintiff Sapon in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

110. Plaintiff Sapon repeats and realleges all paragraphs above as though fully set forth herein.

111. Defendants required Plaintiff Sapon to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform his job, further reducing his wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

112. Plaintiff Sapon was damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

113. Plaintiff Sapon repeats and realleges all paragraphs above as though set forth fully herein.

114. Defendants did not pay Plaintiff Sapon on a regular weekly basis, in violation of NYLL §191.

115. Defendants are liable to Plaintiff Sapon in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sapon respectfully requests that this Court enter judgment against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Sapon and the FLSA Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Sapon and the FLSA Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Sapon's and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff Sapon and the FLSA Class members;

(f) Awarding Plaintiff Sapon and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiff Sapon and the FLSA Class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Sapon;

(i) Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Sapon;

(j) Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiff Sapon;

(k) Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiff Sapon;

(l) Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff Sapon's compensation, hours, wages and any deductions or credits taken against wages;

(m) Declaring that Defendants' violations of the provisions of the NYLL and the spread of hours wage order are willful as to Plaintiff Sapon;

(n) Awarding Plaintiff Sapon damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o) Awarding Plaintiff Sapon damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p) Awarding Plaintiff Sapon liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q) Awarding Plaintiff Sapon and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r) Awarding Plaintiff Sapon and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

      (s)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

      (t)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Sapon demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
       May 4, 2018

      MICHAEL FAILLACE & ASSOCIATES, P.C.

By:  /s/ Michael Faillace
     Michael Faillace [MF-8436]
     60 East 42nd Street, Suite 4510
     New York, New York 10165
     Telephone: (212) 317-1200
     Facsimile: (212) 317-1620
     *Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510  
New York, New York 10165

Telephone: (212) 317-1200  
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 2, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.  
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:               Edgar Sapon Sapon

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:           _[signature]_

Date / Fecha:                2 de Mayo 2018

*Certified as a minority-owned business in the State of New York*